**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION**

| | | |
|---|---|---|
| **EDUARDO CARREON-IBARRA,** | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| V. | § | **CIVIL ACTION NO. 5:19-CV-137** |
| | § | **CRIM. ACTION NO. 5:8-CR-244-19** |
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| Respondent. | § | |

## REPORT AND RECOMMENDATION

Federal Prisoner Eduardo Carreon-Ibarra (BOP Reg. No. 45402-179) has filed a *pro se* Motion Under 25 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody. (Dkt. No. 1).[1] This motion initiated the instant civil action for collateral or habeas corpus review. Carreon-Ibarra subsequently filed an Amended Motion. (Dkt. No. 8). On January 17, 2020, the United States filed a motion to dismiss both the original motion and the amended motion. (Dkt. No. 12).

The District Court referred this case to the Undersigned on May 28, 2021, for rulings on non-dispositive motions, preparation of findings of fact, and recommendations of law on dispositive motions. (Dkt. No. 23). After reviewing Petitioner's submissions, the record of the proceedings before the District Court in the underlying criminal case, and the applicable case law, the Undersigned recommends that the District Judge DENY Carreon-Ibarra's motion and GRANT the United States' motion to dismiss.

## I. Procedural History

### A. First Conviction and First Direct Appeal

On August 4, 2008, Carreon-Ibarra entered a guilty plea to the indictment charging him with interstate or foreign travel or transportation in aid of racketeering enterprises in violation of 18 U.S.C. § 1952(a)(2) (Count 24) and use of a firearm in a

---

[1] Unless otherwise noted, "Dkt." indicates a citation to the record in the civil action that has been opened for this collateral-review proceeding under 28 U.S.C. § 2255. "Cr. Dkt." indicates a citation to the record in the underlying criminal case. Page numbers refer to the pagination assigned to the docket entries by the court's electronic filing system, CM/ECF.

crime of violence and drug-trafficking crime in violation of 18 U.S.C. § 924(c) (Count 26). (Cr. Dkt. No. 260 at 1). On December 2, 2010, the Court sentenced Carreon-Ibarra to 240 months of imprisonment for Count 24 and 480 months of imprisonment in Count 26. (Cr. Dkt. No. 748 at 2). These sentences were to run consecutively for a total of 720 months in custody. (*Id.*).

Carreon-Ibarra timely filed for direct appeal of his first conviction and sentence on December 20, 2010. (Cr. Dkt. No. 755). On February 29, 2012,[2] the Fifth Circuit Court of Appeals granted his first direct appeal and vacated his conviction and sentence for Count 26 only. (Cr. Dkt. No. 1049). The Fifth Circuit left his conviction and sentence for Count 24 undisturbed. *United States v. Carreon-Ibarra*, 673 F.3d 358, 367 (5th Cir. 2012).

### B. Second Conviction and Second Direct Appeal

Carreon-Ibarra's case was then remanded back to the district court, where he entered a cold plea to Count 26. (Cr. Min. Entry dated June 1, 2012). On October 19, 2012, the Court sentenced him to 300 months of imprisonment for Count 26. (Cr. Min. Entry dated Oct. 19, 2012).

Carreon-Ibarra filed a second direct appeal to the Fifth Circuit on November 1, 2012. (Cr. Dkt. No. 1137). On October 18, 2013,[3] the Fifth Circuit denied his second appeal and affirmed Carreon-Ibarra's conviction and sentence. (Cr. Dkt. No. 1186). Carreon-Ibarra did not appeal the Fifth Circuit's ruling to the United States Supreme Court. His conviction became final on January 16, 2014. *See Dodd v. United States*, 545 U.S. 353, 355 (2005) (stating that a conviction becomes final 90 days after the court of appeals issues a decision and a defendant does not file a petition for certiorari).

### C. Post-Conviction Motion under 25 U.S.C. § 2255

On September 17, 2019, Carreon-Ibarra filed his first *pro se* motion for relief under

---

[2] According the Clerk of Court's stamp on the docketed order, the Fifth Circuit issued its order vacating Carreon-Ibarra's conviction on February 29, 2012. (Cr. Dkt. No. 639). However, the order was not filed with the Southern District of Texas until March 29, 2012. (*Id.*). Therefore, the date on Carreon-Ibarra's docket appears different from the date that the Fifth Circuit's order was actually filed. The Court will abide by the dates that the issuing court ascribes to a particular order.

[3] The Clerk of Court's stamp on the docketed order indicates that the Fifth Circuit issued its order affirming Carreon-Ibarra's conviction on October 18, 2013. (Cr. Dkt. No. 1186). The order was not filed with the Southern District of Texas until November 13, 2013. (*Id.*).

§ 2255.[4] (Dkt. No. 1). His motion raised one claim challenging the 300-month sentence he received for Count 26 for use of a firearm in a crime of violence in violation of 18 U.S.C. § 924(c). (*Id.* at 10). Specifically, Carreon-Ibarra asserts that the Supreme Court's ruling in *Davis v. United States*, 139 S. Ct. 2319 (2019) divests the courts of jurisdiction to impose any sentence for Count 26. (*Id.*).

On November 11, 2019, the Court received Carreon-Ibarra's amended motion to vacate. (Dkt. No. 8). In his amended motion, Carreon-Ibarra raises two claims in addition to the claim in his original motion for relief. First, Carreon-Ibarra asserts that his conviction for Count 24 under 18 U.S.C. § 1952(a)(2) was unconstitutional because the Government did not have enough evidence to support the conviction. (Dkt. No. 8 at 1). Second, Carreon-Ibarra asserts that he was deprived of the effective assistance of counsel because his trial attorney did not fully inform him of the benefits of going to trial compared to entering a guilty plea. (*Id.* at 2).

On January 17, 2020, the Government responded to all Carreon-Ibarra's claims, asserting that the Court should dismiss all Carreon-Ibarra's claims. (Dkt. No. 12). The Government first argued that Carreon-Ibarra's claim under *Davis* was meritless because Carreon-Ibarra's conviction under § 924(c)(1)(A)(i) and (2) were not premised on the unconstitutionally vague residual clause in § 924(c)(3)(B). (*Id.* at 12–17). Second, the Government argues that the additional claims in Carreon-Ibarra's amended motion should be procedurally dismissed as untimely. (*Id.* at 18–21). The Court agrees with the Government.

---

[4] Carreon-Ibarra failed to sign or certify the date that his motion for relief under § 2255 was placed in the prison mailing system. (Dkt. No. 1 at 16). Normally, the certified date is the controlling date for purposes of the statute of limitations. 28 U.S.C. § 2244(d); *Windland v. Quarterman*, 578 F.3d 314, 318 (5th Cir. 2009) (the mailbox rule is applicable to federal filings by prisoners); Rule 3, Rules Governing § 2254 Cases (mailbox rule). However, the Clerk of Court has a policy of stamping the date on the outside of the envelope whenever the Court receives a submission by mail. (Dkt. No. 1 at 17). In this case, the Clerk stamped the date September 24, 2019. (*Id.*). There is no postmark on the envelope to indicate the date that the petition was placed in the mail, but the Court notes that the date of September 17, 2019 is also handwritten on the envelope. (*Id.*). Given the typical time that it would take for mail from Indiana to reach Laredo, it is plausible that the handwritten date of September 17, 2019 is the date that the envelope was first placed in the mail. Therefore, the date of September 17, 2019 will control for the purposes of the statute of limitations under the mailbox rule. This is the more favorable date for Carreon-Ibarra, although it does not have a substantive effect on the Court's analysis of the timeliness of Carreon-Ibarra's claims.

## II. Legal Standard

After a defendant has been convicted and has exhausted or waived any right to appeal, a court is normally "entitled to presume that [he] stands fairly and finally convicted." *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001) (citations omitted). "As a result, review of convictions under [28 U.S.C. § 2255] ordinarily is limited to questions of constitutional or jurisdictional magnitude, which may not be raised for the first time on collateral review without a showing of cause and prejudice." *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998). In other words, relief under § 2255 is "reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992). If the reviewing court concludes that the prisoner's motion is meritorious, it must "vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

Carreon-Ibarra is representing himself throughout his proceedings under § 2255. It is a court's "duty to construe *pro se* [filings] liberally so that a litigant will not suffer simply because he did not attend law school or find a suitable attorney." *United States v. Ayika*, 554 F. App'x 302, 308 (5th Cir. 2014) (per curiam). As a result, a *pro se* litigant's pleadings are entitled to a liberal construction and are subject to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam).

## III. Discussion

### A. *Davis* Does Not Apply.

In his original motion to vacate, Carreon-Ibarra challenges the 300-month prison sentence for the charge of conspiracy to use a firearm during a crime of violence found in Count 26. He argues that the Supreme Court's recent decision in *Davis v. United States*, 139 S. Ct. 2319 (2019), renders his conviction and sentence under § 924(c)(1)(A)(i) and (2) invalid.

A federal criminal defendant may seek relief under 28 U.S.C. § 2255 within one year from the date that a constitutional "right has been newly recognized by the Supreme

Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(f)(3). The Fifth Circuit has recognized that the holding in *Davis* established a newly recognized constitutional right that applies retroactively. *See United States v. Reece*, 938 F.3d 630, 634–35 (5th Cir. 2019). Carreon-Ibarra filed his motion under § 2255 on September 14, 2019. (Dkt. No. 1). Carreon-Ibarra could not have raised his *Davis* claim on direct appeal in 2014 because *Davis* had not yet been decided at that time. Because his motion to vacate under § 2255 was filed within one year from the date that *Davis* was decided, Carreon-Ibarra's motion is timely. Therefore, the Court will proceed to consider the merits of Carreon-Ibarra's motion.

On June 26, 2015, the Supreme Court held that a residual clause found in the Armed Career Criminal Act ("ACCA"), which defined a "violent felony" for purposes of a sentence enhancement found in 18 U.S.C. § 924(e)(2)(B)(ii), was unconstitutionally void for vagueness. *See United States v. Johnson*, 576 U.S. 591, 597 (2015). The following term in *Welch v. United States*, the Supreme Court held that *Johnson* was a new substantive rule of law that applies retroactively to cases on collateral review. 136 S. Ct. 1257, 1265 (2016). Two years later, the Supreme Court extended the void-for-vagueness reasoning in *Johnson* to invalidate a residual clause found in the federal criminal code's definition of a "crime of violence," 18 U.S.C. § 16(b), as incorporated into immigration statutes governing removal, 8 U.S.C. § 1101(a)(43)(F). *See Sessions v. Dimaya*, 138 S. Ct. 1204, 1215–16 (2018).

The Supreme Court's ruling in *Davis v. United States* extended the holdings in *Johnson* and *Dimaya*. The *Davis* Court specifically considered the language of 18 U.S.C. § 924, which allows courts to enhance criminal sentences if the defendant is carrying a gun when committing certain felonies. In the context of § 924, those felonies are called "predicate crimes." A defendant cannot receive an enhanced sentence under § 924 if he was not also convicted of a predicate crime that triggers the application of § 924.

The Supreme Court's ruling in *Davis* focused on two clauses of § 924: § 924(c)(3)(A) and (c)(3)(B). These clauses provide definitions for predicate "crimes of violence" that may trigger the § 924 sentencing enhancement. Under the first clause, known as the "elements clause," an offense qualifies as a crime of violence if it is a felony that "has as an element the use, attempted use, or threatened use of physical force against the person

or property of another." 18 U.S.C. § 924(c)(3)(A). Under the second clause, known as the "residual clause," an offense qualifies as a crime of violence if it is a felony "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 924(c)(3)(B).

The *Davis* Court struck down the residual clause found in 18 U.S.C. § 924(c)(3)(B), holding that the definition for a crime of violence in the residual clause found in § 924(c)(3)(B) was unconstitutionally vague. *See Davis*, 139 S. Ct. at 2336. As a result, a conviction and sentence predicated on a crime of violence as defined by § 924(c)(3)(B) is no longer valid. *See id*.

Carreon-Ibarra was convicted under § 924(c)(1)(A)(i), which presents neither the residual nor the elements clauses at issue in *Davis*. Instead, Carreon-Ibarra was convicted under an entirely different subsection of the same statute. Unlike § 924(c)(3), § 924(c)(1) allows courts to enhance a sentence where a weapon was used for *either* a crime of violence or a drug-trafficking crime. 18 U.S.C. § 924(c)(1)(A). In this case, the predicate crime listed in Count 24 of the second superseding indictment was *both* a crime of violence and a drug-trafficking crime. (Cr. Dkt. No. 1102 at 33–34). Specifically, Count 24 states that Carreon-Ibarra

> did travel in foreign commerce, that is, to and from the United States and to and from Mexico, and use a facility in interstate and foreign commerce, that is, a cellular telephone, with the intent to commit a crime of violence to further an unlawful activity, that is, a business enterprise involving controlled substances."

(*Id.*).

Carreon-Ibarra's second sentencing and direct appeal again confirmed that his conviction was premised on his actions in furtherance of drug trafficking. At his sentencing, the District Judge noted for the record that Carreon-Ibarra had been acting as an assassin or *sicario* on behalf of a drug cartel—namely, the Gulf Cartel and its paramilitary enforcement arm, the Zetas. (Cr. Dkt. No. 1156 at 6–8). Carreon-Ibarra did not object. The Fifth Circuit highlighted these facts when it affirmed his second sentence, stating:

> According to the oral factual basis for the plea, Carreon-Ibarra, a member of the Zetas, the enforcement arm of the Gulf Cartel, a.k.a. "La Compañía,"

the Mexican drug-trafficking and money-laundering organization, traveled to Laredo, Texas, where he and a juvenile co-conspirator planned to assassinate a member of the Sinaloa Cartel, a.k.a. "Los Chapos," a rival Mexican drug cartel, at a restaurant.

*United States of America v. Eduardo Carreon-Ibarra*, 542 Fed. App'x. 351, 351 (5th Cir. 2013).

Other district courts have already held that *Davis* does not apply to predicate drug-trafficking crimes as described in § 924(c)(1). In *United States v. Benjamin*, the court rejected a motion for relief under § 2255 where the petitioner similarly argued that his § 924(c) conviction was invalid under *Davis*. Criminal Action No. 3-274, 2021 WL 1212720 (E.D. La. March 31, 2021). The court stated that "The government's only reference to the petitioner's gun use and violent acts was to show that they were done in furtherance of the narcotics operation and not to serve as predicate crimes of violence in violation of *Davis*." *Id.* at *5. In *United States v. Ratcliff*, the district court came to the same conclusion, stating that "*Davis* applies only when a defendant's 924(c) conviction is predicated on a crime of violence as defined by the residual clause. It has no application if the predicate crime was a crime of violence defined by the elements clause, or if the predicate crime was a drug-trafficking crime." No. 12-51, 2020 WL 3429893, at *2 (E.D. La. June 23, 2020).

Carreon-Ibarra's argument is similar to that asserted by one of his co-defendants, Gerardo Castillo Chavez, recently under *Davis*. Civil Action No. 5:16-CV-173, 2021 WL 765764 (S.D. Tex. Feb. 25, 2021); (Dkt. No. 883). In that case, the district court came to the same conclusion as this Court, determining that *Davis* did not displace the petitioner's conviction under § 924(c). *Id.* at *10–11.

The predicate conviction in Carreon-Ibarra's case was travel and use of foreign commerce to further drug trafficking. His predicate conviction is indisputably based on his actions as a *sicario* for the Gulf Cartel and the Zetas. This means that his § 924(c)(1) conviction is premised on a conviction that constitutes both a drug-trafficking crime and a crime of violence. *Davis* does not apply to predicate drug-trafficking crimes as described in § 924(c)(1), and it does not apply to crimes of violence as defined outside of the residual clause, as was Carreon-Ibarra's case. For the foregoing reasons, this Court recommends that the District Judge **DENY** Carreon-Ibarra's *Davis* claim.

### B. The Claims Raised in the Amended Motion are Untimely.

In an amendment to his original motion to vacate, Carreon-Ibarra raises two new arguments that are not in the original motion. First, he argues that the Government did not have sufficient evidence to convict him of violating 18 U.S.C. § 1952(a)(2). (Dkt. No. 8 at 1–2). Second, he argues that he did not enter a voluntary plea at the time of his conviction because his attorney did not fully inform him of the costs and benefits of going to trial as opposed to pleading guilty. (Dkt. No. 8 at 2). Carreon-Ibarra has not made these arguments in any previous motion to vacate under § 2255. (*Compare id. with* Dkt. No. 1).

A motion made under § 2255 is subject to a one-year statute of limitations which, in most cases, begins to run when the judgment becomes final.[5] 28 U.S.C. § 2255(f). A judgment becomes final when the period to seek direct review of a final conviction has expired. *Clay v. United States*, 537 U.S. 522, 532 (2003). Carreon-Ibarra filed a timely direct appeal to the Fifth Circuit regarding the second sentence imposed in his case. (Cr. Dkt. No. 1137). The Fifth Circuit affirmed Carreon-Ibarra's second sentence on October 18, 2013. (Cr. Dkt. No. 1186). He did not file a petition for certiorari. A conviction becomes final 90 days after the time for filing a petition for certiorari expires. *Dodd*, 545 U.S. at 355. Carreon-Ibarra's conviction therefore became final on January 16, 2014, and the one-year limitations period to file a claim for ineffective assistance of counsel expired on January 16, 2015.

Section 2255(f)(3) provides for tolling of the limitations period only when a newly recognized right has been made retroactively applicable. The Supreme Court has held

---

[5] Section 2255 also provides certain alternative dates upon which the limitations period may begin. Specifically, it provides that the limitations period shall run from the latest of:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

that a new claim in a habeas petition does not escape AEDPA's one-year time limit unless the claim arises from the same core facts as the timely filed claims. *Mayle v. Felix*, 545 U.S. 644, 656–57 (2005). Carreon-Ibarra's additional claims do not arise from the same facts as his initial *Davis* claim. Moreover, neither insufficient evidence claims nor ineffective assistance claims are newly recognized rights. Both additional claims are therefore time-barred regardless of whether Carreon-Ibarra's *Davis* claim was timely.

### C. The Claims in the Amended Motion are not Meritorious.

Even if the claims in Carreon-Ibarra's amended motion were timely, the District Judge should dismiss them because they lack merit. The Court will briefly address the merits of each claim in turn.

#### *1. Insufficient Evidence to Convict*

Carreon-Ibarra's first additional claim asserts that that "the Government did not have the evidence to demonstrate that the Movant had knowledge to a practical certainty that the attempted crime of violence was to be committed." (Dkt. No. 8 at 1). The Court construes this argument as asserting that the Government did not have sufficient evidence to support his conviction under 18 U.S.C. § 1952(a)(2).

Generally, a petitioner may not raise issues on collateral attack that he failed to raise on direct appeal "without showing both cause for his procedural default, and actual prejudice resulting from the error." *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991) (en banc) (internal quotation marks omitted). "A defendant must meet this cause and actual prejudice test even when he alleges a fundamental constitutional error." *Id.* Failure to raise issues on direct appeal causes them to be procedurally defaulted for purposes of collateral attack. *United States v. Lopez*, 248 F.3d 427, 433 (5th Cir. 2001).

Cause is established by showing that "some objective factor external to the defense" prevented him from raising the issue on direct appeal. *United States v. Reedy*, 393 F. App'x 246, 247 (5th Cir. 2010) (citing *United States v. Guerra*, 94 F.3d 989, 993 (5th Cir. 1996)). Furthermore, actual prejudice requires that the petitioner "shoulder the burden of showing, not merely that the errors at his trial created a possibility of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152,

170 (1982) (emphasis in original). "This cause and actual prejudice standard presents a significantly higher hurdle than the plain error standard that we apply on direct appeal." *Shaid*, 937 F.2d at 232 (citing *Frady*, 456 U.S. at 168) (internal quotation marks omitted).

Carreon-Ibarra may show cause and prejudice if he can successfully show that his attorney on direct appeal fell below constitutional standards of effectiveness. Put differently, the failure of the second claim in his amended motion—ineffective assistance of counsel—also dooms the first claim in his amended motion. As explained below, the Court has concluded that Carreon-Ibarra's ineffective assistance claim fails on the merits. As a result, the Court concludes that Carreon-Ibarra was unable to show cause or prejudice, and that he has procedurally defaulted on his claim of insufficient evidence.

### *2. Ineffective Assistance of Counsel*

Carreon-Ibarra's second additional claim asserts that his plea was involuntary because counsel did not fully inform him of the costs and benefits of pleading as opposed to going to trial. (Dkt. No. 8 at 2). The Court construes this statement as an assertion that Carreon-Ibarra's trial counsel was ineffective.

As an initial matter, the Court notes that Carreon-Ibarra did not procedurally default on his ineffective assistance claims by failing to raise them on direct appeal. This is because the Supreme Court has previously held that an "ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003).

Judicial scrutiny of counsel's performance is highly deferential. *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992), *cert. denied*, 509 U.S. 921 (1993). On post-conviction review, trial counsel are entitled to a strong presumption that they "rendered adequate assistance and that the challenged conduct was the product of reasoned trial strategy." *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 690 (1984)). To overcome the presumption of competence, the petitioner "must identify the acts or missions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690.

Petitioner must also show that, absent his counsel's deficient performance, the result of his case would have been different. "An error by counsel, even if professionally

unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. Constitutionally effective assistance of counsel under *Strickland* is not errorless counsel. Ultimately, the determination of whether counsel has rendered reasonably effective assistance turns on the totality of facts in the record. *Id.* at 695.

The Court notes that the record does not show the extent to which trial counsel discussed the costs and benefits of going to trial as opposed to entering a plea. However, even assuming *arguendo* that counsel failed to discuss the available options with Carreon-Ibarra, the Court concludes that Carreon-Ibarra would not have been prejudiced. Failure of counsel to discuss Carreon-Ibarra's options would have had no effect on the judgment because the district judge took great pains to thoroughly explain the costs and benefits to Carreon-Ibarra at the final pretrial conference for his second plea:

> THE COURT: Okay. If you have a plea agreement -- well, let me back up. If you were to -- let me just -- if you were to go to trial, let's say you went to trial, and the jury found that you did possess a machine gun, okay? Then the Court would have no choice but to sentence you to 30 years added to what you have already. Okay? I couldn't do less, even if I wanted to. I'm not saying I would want to, but I'm telling you I couldn't do less, even if I wanted to. It would require at least 30 years added onto what you have. If you were to go to trial and the jury were to find that you possessed a machine gun. Okay.
> Now, if you enter a plea with an agreement -- a plea agreement like it was last time, then the Court can consider for this charge from five years up to life. And within that five years to life the Court could decide to sentence to what it did last time, or it could decide to sentence you to something more or something less. But I could then consider from five to life if you have a plea agreement as it has been, you know, proposed right now. Okay.
> If you enter a cold plea, okay, and the government won't accept a plea in this case unless you admit to the firearm, so really, I guess, that's not an option. You don't want to admit to the firearm. So, it sounds like your options are you enter a plea like last time, you know, and the government will make the same recommendation, you know, and take your chances on what the Court decides to do, but the Court would have the option of five years to life.
> You go to trial, you get found not guilty, which means you don't get anything extra. You go to trial, you get found guilty of possession of a firearm that's not a machine gun, you're looking at the five years to life. I

> will tell you in that case, then again the Court has the same options as it does if you enter a plea to that, except that you may not get acceptance of responsibility, so that may put you up a little bit higher. Or you get to trial and the jury finds that you possessed a machine gun and the Court has no choice but to add at least 30 years to what you have already. Does that make sense to you?
>
> THE DEFENDANT: Yes, ma'am.

(Cr. Dkt. No. 1156 at 18–19).

The record shows that Carreon-Ibarra unequivocally stated that he understood the costs and benefits of each of the options before him: entering a cold plea, signing a written plea agreement, and going to trial. (*Id.*). Even if trial counsel had failed to explain Carreon-Ibarra's options to him, the outcome in Carreon-Ibarra's case would have been the same. Because Carreon-Ibarra entered a fully informed guilty plea, the Court concludes that his claim of ineffective assistance of counsel lacks merit.

### IV. Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2255 Cases in the United States District Courts requires a district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In order to make that showing, a petitioner must demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (*quoting Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

The Court concludes that reasonable jurists would not debate whether the pending motion to vacate under § 2255 should be denied. The Court therefore **RECOMMENDS** that the District Judge **DENY** a certificate of appealability in this case.

### V. Conclusion

Based on the foregoing, the Court **RECOMMENDS** that the District Judge

**DENY** Plaintiff's Motion to Vacate, Set Aside or Correct Sentence (2255) as to Criminal Case. (Dkt. No. 1). The Court also **RECOMMENDS** that the District Judge **DENY** a certificate of appealability.

## VI. Notice of Right to Object

Within fourteen days after being served with a copy of this Report and Recommendation, the parties may file written objections to the findings and recommendations proposed above. 28 U.S.C. § 636(b)(1). The District Judge will review *de novo* those portions of the report or specified proposed findings or recommendations to which the party objects. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150–53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996). The District Judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by this Court, and may also receive further evidence or recommit the matter to this Court with instructions. 28 U.S.C. § 636(b)(1)(C). The District Court need not consider frivolous, conclusive, or general objections. *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). If a party does not object within fourteen days, the party forfeits its right to District Court review. *Thomas*, 474 U.S. at 150.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after service shall bar an aggrieved party from *de novo* review by the District Court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the District Court, except on grounds of plain error or manifest injustice. *Douglass*, 79 F.3d at 1428.

The Court **DIRECTS** the Clerk of the Court to mail Petitioner a copy of this Report and Recommendation by certified mail return receipt requested at the address indicated in his most recent filing.

**SIGNED** on July 30, 2021.

John A. Kazen
United States Magistrate Judge